**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IVAN BLANCO and KATHRYN SWIGGUM, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | Case No. _____ |
| v. | Judge: _____ |
| MONDELEZ INTERNATIONAL, INC., a Virginia corporation; MONDELEZ GLOBAL, LLC, a Delaware limited liability company; AND NABISCO, INC., a New Jersey corporation, | Magistrate Judge: _____ |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR DAMAGES**

Plaintiffs Ivan Blanco and Kathryn Swiggum bring this putative class action against Mondelez International, Inc., Mondelez Global, LLC and Nabisco, Inc. (collectively, "Defendants" or "MDLZ"), individually and on behalf of all others similarly situated, and alleges the following.

**I**

**INTRODUCTION**

1.      This case concerns MDLZ's representation that Wheat Thins crackers are **"100% WHOLE GRAIN"**, meaning that *all* (or *100%*) of the grain ingredients in Wheat Thins are whole grain ingredients.  They aren't.

2.      One of the primary grain ingredients in Wheat Thins crackers is cornstarch, which is a refined grain.  By definition, refined grains are not and cannot be whole grains.  Thus, MDLZ's representation that all (or 100%) of the grain ingredients in Wheat Thins are "whole grain" is patently false and utterly misleading.

*Figure 1 – Examples of Packaging Prominently Representing*
*Wheat Thins Crackers as "100% Whole Grain"*

  

## II

## 100% WHOLE GRAIN IS A MATERIAL REPRESENTATION

3.      The representation that Wheat Thins crackers are "100% Whole Grain" is a pillar of the Wheat Thins brand.  The representation is prominently displayed on the front, side and back panel of Wheat Thins packages in large, bold, colorful font.  The representation that Wheat Thins are "100% Whole Grain" crackers is uniform across MDLZ's marketing and labeling for the Wheat Thins product line.

///

*Figure 2 – Example of "100% Whole Grain" Misrepresentation*
*Across Wheat Thins Product Line*

  

4. "100% WHOLE GRAIN" is a key differentiator that gives MDLZ a unique position in the cracker and snack product market. This representation increases sales and induces consumers to purchase Wheat Thins and pay more than they otherwise would for the products.

**III**

**SOME GRAIN INGREDIENTS IN WHEAT THINS ARE REFINED GRAINS,**

**NOT WHOLE GRAINS**

5. There are three types of grain ingredients: whole, refined, and enriched.

a. ***Whole grains.*** All grains begin as whole grains. A whole grain is a kernel comprised of three anatomical components – the germ, the bran and the endosperm. The bran and germ are what offer important antioxidants and good sources of fiber, B vitamins, vitamin E, magnesium, iron, zinc, and protein, and healthy fats. All three primary components of a grain must be present in their original proportions to qualify as a whole grain ingredient.

b. ***Refined grains.*** Refined grains are processed to remove the "germ" and the "bran" components of the grain. When the bran and the germ are removed from the grain during refining processes, the grain is no longer considered "whole." Moreover, roughly 25% of the protein naturally occurring in grain is reduced during the refining process, and the grain is stripped of important nutrients.

3

c. ***Enriched grains.*** Enriched grains add nutrients back into the refined grain. However, not even half of the nutrients removed during the refining process are added back into an enriched grain. The nutrients that are added back in are added in different proportions than would be present in a whole grain.

6. MDLZ itself recognizes the importance of whole grains when compared to refined grains. MDLZ has publicly explained that whole grains are superior because they pack in more vitamins, minerals, fiber and protein than refined grains, which is important to consumers.

7. MDLZ has also recognized that because of the benefits of whole grains over refined or enriched grains, healthcare experts and professionals around the globe are advocating that consumers incorporate whole grains in their daily diet.

8. MDLZ has succeeded in its focus to capitalize on the benefits of "100% WHOLE GRAIN" when advertising, marketing and labeling Wheat Thins products to its consumers.

## IV

## MDLZ'S REPRESENTATION "100% WHOLE GRAIN" ON WHEAT THINS IS FALSE AND MISLEADING

9. Unfortunately, MDLZ has used the representation "100% WHOLE GRAIN" deceptively and has risen to the top of cracker and snack product market through this deceit. MDLZ's representations that Wheat Thins are "100% WHOLE GRAIN" is false. The grain ingredients in MDLZ's products are not *all* (or 100%) whole grains.

10. A prominent grain ingredient in Wheat Thins is cornstarch.

11. Cornstarch is listed as one of the top ingredients in the Wheat Thins product formula. Cornstarch is not, however, a whole grain. Instead, cornstarch is a refined grain.

12. Corn kernels are whole grains. Cornstarch is made from only the endosperm of the corn kernel. The whole grain corn kernels are first refined to remove the germ and the bran part of the grain. Using only the endosperm of the grain, starch is extracted and dried to form a fine white powder. This is cornstarch.

4

13.     Because cornstarch has been refined, it is not a whole grain under any definition or reasonable understanding of the term. Rather, it is a refined grain. Thus, MDLZ's representation that all (or 100%) of the grain ingredients in Wheat Thins are whole grains is false.

14.     Plaintiffs and the reasonable consumer expect that a product branded "100% WHOLE GRAIN" would in fact contain the characteristics and qualities as packaged, labeled, marketed and advertised and that ***all of the grain ingredients* (100% of them)** would be whole grains. This means that no grain ingredient in the product would be refined or enriched.

15.     This understanding of the phrase "100% WHOLE GRAIN" is common sense. The basic definition of 100 percent (100%) is "completely, entirely."[1] Thus, the general understanding of the phrase "100% WHOLE GRAIN" is that all grain ingredients in Wheat Thins consist *entirely or completely* of whole grains – <u>not</u> that *some* grain ingredients are whole grains and *some* grain ingredients are not.

16.     MDLZ's use of "100% WHOLE GRAIN" can only be reasonably interpreted to refer to 100% (all of) the grain ingredients in the product. This understanding is consistent with guidance issued by the FDA and the position advocated by the Whole Grains Council.

17.     FDA guidance provides that "products labeled with '100 percent whole grain' not contain grain ingredients other than those the agency considers to be whole grains."[2]

18.     The Whole Grains Council is a nonprofit consumer advocacy group with a mission to educate consumers about the definition of "whole grain" and whole grain health benefits.[3]

19.     The Whole Grains Council has three different "stamps" that make it easy for consumers to identify the existence of whole grains in a product: the 100% Stamp, the 50%+ Stamp, and the Basic Stamp. The Whole Grains Council utilizes the "100% Stamp" to indicate

---

[1] *https://www.merriam-webster.com/dictionary/100%20percent* (last visited December 20, 2024).
[2] FDA Draft Guidance for Industry: Whole Grain Label Statements (February 2006), *available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/draft-guidance-industry-and-fda-staff-whole-grain-label-statements* (last visited December 20, 2024).
[3] *https://wholegrainscouncil.org/about-us* (last visited December 20, 2024).

for a given product that "**all its grain ingredients are whole grain**." (Emphasis added)[4]   This
is the same, common-sense definition of 100% Whole Grain applicable here.

20.     In sum, MDLZ's representation that Wheat Thins are "100% WHOLE GRAIN"
is false and misleading:

*A central message is that Wheat Thins are **"100% WHOLE GRAIN"***



*This representation means that **all grain ingredients** (100% of them) are whole grains*



*A prominent grain ingredient Wheat Thins is **Cornstarch***



*Cornstarch is a **refined grain***



*Thus, **NOT 100%** of the grain ingredients in Wheat Thins are whole grains*



*Therefore, MDLZ's representation that Wheat Thins are **"100% WHOLE GRAIN"***
*is false and misleading*

21.     Self-declaring itself as the leading player in the global snack arena, at all times
relevant, MDLZ knew, or should have known, the fact that the inclusion of cornstarch in Wheat
Thins made the representation "100% WHOLE GRAIN" false and misleading, but it
disregarded this knowledge in order to continue its deception and reap bigger profits.

22.     Plaintiffs and other consumers have reasonably relied upon MDLZ's deceptive
labeling of Wheat Thins as "100% WHOLE GRAIN" in deciding to purchase MDLZ's

---

[4] *https://wholegrainscouncil.org/whole-grain-stamp* (last visited December 20, 2024).

6

products. If Plaintiffs and other consumers had known the representation was false, they would not have purchased MDLZ's products or, alternatively, would have paid less for them. Therefore, Plaintiffs and other consumers similarly situated have suffered injury-in-fact as a result of MDLZ's deceptive, false and misleading practice.

23.     MDLZ's false, misleading, and deceptive practices as alleged herein are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and members of the Class.

24.     As a result of Defendants' false, misleading, and deceptive representations as alleged herein, Defendants injured Plaintiffs and members of the putative class ("Class") in that Plaintiffs and members of the Class:

      a.     Paid a sum of money for Wheat Thins that did not have the characteristics or qualities they were represented and promised to have;

      b.     Were deprived of the benefit of the bargain because the Wheat Thins products they purchased were different from what Defendants warranted;

      c.     Were deprived the benefit of the bargain because the Wheat Thins products they purchased had less value than what Defendants represented;

      d.     Were denied the benefit of truthful food labels.

## V

## THE PARTIES

### *Plaintiff Ivan Blanco*

25.     Plaintiff Ivan Blanco is, and at all relevant times alleged herein was, a resident of Schaumburg, Illinois, and over the age of eighteen (18) years. Over the past several years, Mr. Blanco purchased Wheat Thins crackers, including Original, Hint of Salt, & Reduced Fat Wheat Thins, monthly from grocery stores in and around Schaumburg, Illinois, including Mariano's.

26.     Each time Mr. Blanco purchased Wheat Thins, he was exposed to, read, and relied upon the representation that Wheat Thins were "100% WHOLE GRAIN," which was prominently displayed on the packages of the products he purchased. Based upon this representation, Mr.

Blanco reasonably expected that *all* of the grain ingredients (100% of them) in Wheat Thins were whole grains, not refined or enriched grains. Mr. Blanco reasonably relied on MDLZ's representation when making the decision to purchase Wheat Thins, and was actually deceived because the products he purchased contained refined grains, including cornstarch. At the time of his purchases, Mr. Blanco did not know that cornstarch was a refined grain ingredient in Wheat Thins. As a result of MDLZ's actions, Mr. Blanco lost money and suffered injury in fact.

### ***Plaintiff Kathryn Swiggum***

27.     Plaintiff Kathryn Swiggum is, and at all relevant times alleged herein was, a resident of Largo, Florida, and over the age of eighteen (18) years. Within the past several years, Ms. Swiggum purchased Original Wheat Thins multiple times a year at grocery stores in and around Largo, Florida, including Shucks and Publix. Ms. Swiggum also purchased various other Class Products at least once during this same time frame.

28.     Each time Ms. Swiggum purchased Wheat Thins, she was exposed to, read, and relied upon the representation that Wheat Thins were "100% WHOLE GRAIN," which was prominently displayed on the packages of the products she purchased. Based upon this representation, Ms. Swiggum reasonably expected that all of the grain ingredients (100% of them) in Wheat Thins were whole grains, not refined or enriched grains. Ms. Swiggum reasonably relied on MDLZ's representation when making the decision to purchase Wheat Thins, and she was actually deceived because the products she purchased contained refined grains, including cornstarch. At the time of her purchases, Ms. Swiggum did not know that cornstarch was a refined grain ingredient in Wheat Thins. As a result of MDLZ's actions, Ms. Swiggum lost money and suffered injury in fact.

29.     At the time of each purchase, Plaintiffs reasonably believed that MDLZ's Wheat Thins products did in fact have the claimed characteristics as labeled and advertised.

30.     Plaintiffs relied on the misrepresentation alleged herein in making their decision to purchase Wheat Thins and would not have purchased Wheat Thins if they had known they

were not "100% WHOLE GRAIN." Plaintiffs were injured in fact and lost money as a result of MDLZ's improper conduct.

31.     Alternatively, Plaintiffs would not have paid as much as they did for Wheat Thins if they had known they were not "100% WHOLE GRAIN." Plaintiffs were injured in fact and lost money as a result of MDLZ's deceptive conduct.

32.     Therefore, Plaintiffs have suffered injury in fact and have standing to represent all other consumers similarly situated that reside in each of their respective states that purchased sufficiently similar Wheat Thins products that are labeled "100% WHOLE GRAIN," but contain refined grain ingredients, including cornstarch. The below list of products (in all sizes) are the Wheat Thins products at issue in this case (the "Class Products"):

- Original Wheat Thins
- Reduced Fat Wheat Thins
- Sundried Tomato & Basil Wheat Thins
- Big Wheat Thins
- Ranch Wheat Thins
- Hint of Salt Wheat Thins
- Cracked Pepper & Olive Oil Wheat Thins
- Spicy Sweet Chili Wheat Thins

33.     Each of these Wheat Thins products are sufficiently similar to the Wheat Thins products that Plaintiffs purchased. Each product is a cracker and snack product. They are all comprised of the same primary ingredients and differ only in flavor and related sub-ingredients. Importantly, MDLZ makes the same uniform "100% WHOLE GRAIN" misrepresentation on every single one of these Wheat Thins products. As a result, all Wheat Thins products at issue in this case uniformly suffer from the same misrepresentation that Wheat Thins are 100% WHOLE GRAIN, when in fact this representation is false and misleading because the products all contain the refined grains, including cornstarch.

*__Defendants MDLZ__*

34.     Plaintiffs are informed and, on that basis, believes that Defendant Mondelez International, Inc. is a Virginia corporation with its headquarters in Chicago, Illinois. Wheat Thins are distributed by Mondelez Global, LLC, a wholly-owned subsidiary of Mondelez International, Inc. Defendant Nabisco, Inc. is a wholly owned subsidiary of Kraft Foods Global Brands LLC, a subsidiary of Mondeléz Global LLC. Collectively, these Defendants are referred to as "MDLZ."

35.     MDLZ markets and sells Wheat Thins throughout the United States, including sales in Illinois and Florida.

36.     At all times relevant herein, MDLZ and its subsidiaries, parents, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of MDLZ, and at all times relevant herein, each were acting within the course and scope of that agency and employment.

37.     Whenever reference in this Class Action Complaint is made to any act by MDLZ, including its subsidiaries, affiliates, distributors, retailers, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of MDLZ committed, knew of, performed, authorized, ratified, and/or directed that act or transaction on behalf of MDLZ while actively engaged in the scope of their duties.

## VI

## JURISDICTION AND VENUE

38.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from MDLZ; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interests and costs.

39.     This Court has personal jurisdiction because MDLZ's contacts with the forum are continuous and substantial.   MDLZ maintains its headquarters in Illinois and Defendants intentionally availed themselves of the markets within Illinois through marketing and sales of Wheat Thins to consumers, including Plaintiff Ivan Blanco.   Moreover, MDLZ directed its advertising and marketing efforts to Illinois.

40.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because MDLZ maintains its headquarters in Illinois and engages in continuous and systematic business activities within the State of Illinois.   Moreover, venue is proper because a substantial portion of the underlying transactions and events complained of herein occurred and affected entities and persons, including Plaintiff Ivan Blanco, in this judicial district.   MDLZ has received substantial compensation from such transactions and business activity in this judicial district, including as the result of thousands of purchases of Wheat Thins products.   Further, MDLZ's Wheat Thins products inhabit and/or may be found in this judicial district, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

## VII

## CLASS ALLEGATIONS

41.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3) on behalf of the following Classes:

**Multi-State Class**

All Illinois and Florida purchasers of Wheat Thins bearing the representation "100% WHOLE GRAIN" for personal use, when in fact those products contained refined grains, including cornstarch, from October 13, 2018 until the date the notice is disseminated.

**Single-State Classes (*In the Alternative*)**

***Illinois.***   All Illinois purchasers of Wheat Thins bearing the representation "100% WHOLE GRAIN" for personal use, when in fact those products contained refined grains, including cornstarch, from December 23, 2020 until the date the notice is disseminated.

***Florida.*** All Florida purchasers of Wheat Thins bearing the representation "100% WHOLE GRAIN" for personal use, when in fact those products contained refined grains, including cornstarch, from December 23, 2020 until the date the notice is disseminated.

42. Excluded from the Class are: (i) Defendants and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

43. Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

44. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

45. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** Plaintiffs are informed and believe, and on that basis allege, that members of the class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of potentially millions of consumers dispersed throughout the populous states of Illinois and Florida. Accordingly, it would be impracticable to join all individual members of the Class before the Court.

46. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

    a. Whether the representation "100% WHOLE GRAIN" is false and misleading given the inclusion of refined grains, including cornstarch, in the products;

    b. Whether Defendants made material representations in the packaging, marketing and sale of Wheat Thins regarding "100% WHOLE GRAIN";

    c. Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling Wheat Thins as "100% WHOLE GRAIN";

    d. Whether Defendants violated the applicable consumer protection state statutes;

12

     e.     Whether Plaintiffs and the Class members have sustained damage as a result of Defendants' unlawful conduct; and

     f.     The proper measure of damages sustained by Plaintiffs and Class members.

47.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because Plaintiffs, like the Class members, purchased Defendants' falsely packaged, labeled and advertised Wheat Thins products and Plaintiffs and the class members were exposed to the same misrepresentation that the products contain "100% WHOLE GRAIN" when a primary grain ingredient in the products is actually a refined grain. Thus, Plaintiffs' claims arise from the same events, practices, and/or course of conduct that gives rise to the claims of the other class members. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class members sustained similar injuries arising out of Defendants' conduct. Plaintiffs' and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

48.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes they seek to represent because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs will fairly and adequately protect the interests of members of the Class and have retained counsel experienced and competent in the prosecution of complex cases including complex class action questions that arise in consumer protection litigation.

49.    **Predominance and Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy because it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be

practical to pursue individually, are far superior than any difficulties that might be argued with regard to the management of this class action. This superiority makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

50.     Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

51.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**VII**

**<u>CAUSES OF ACTION</u>**

**COUNT I**

**Violations of Illinois Consumer Fraud and Deceptive Business Practices Act**

**(815 ILCS 505/1, *et seq.*)**

52.     Plaintiffs reallege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

53.     Plaintiff Ivan Blanco is a consumer of Wheat Thins and brings this Count individually and on behalf of all other Illinois consumers based on the misrepresentations alleged herein.

54.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") declares unlawful "any [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, suppression, or

14

omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 Ill. Comp. Stat. 505/2.

55. MDLZ's conduct as alleged herein constitutes a violation of the ICFA. MDLZ's conduct was materially misleading to Plaintiffs and the Class because Defendants fundamentally misrepresent the nature of ingredients in Wheat Thins as "100% WHOLE GRAIN" to induce consumers to purchase the crackers. Defendants committed these deceptive acts or practices while engaged in the course of trade or commerce of selling Wheat Thins.

56. During the class period, MDLZ carried out a plan, scheme and course of conduct which was consumer oriented and directed at consumers with the intent that Plaintiffs and the Class members rely on that deception. The injuries to Plaintiffs and the Class members were foreseeable to MDLZ.

57. Defendants intended that Plaintiffs and the Class members would rely on the unlawful, deceptive and/or unfair business acts and practices alleged herein. In the alternative, Defendants, as sophisticated manufacturers in the market, knew or should have known that Wheat Thins did not have the claimed characteristics as alleged herein because Defendants manufactured, marketed and sold the MDLZ products without those claimed characteristics. Defendants knew or should have known that their representations about the MDLZ products as described herein are deceptive and that these statements would be relied upon by reasonable consumers, including Plaintiffs and the members of the Class.

58. Plaintiffs and the Class members did rely to their detriment on Defendants' unfair, deceptive and unlawful business practices as alleged herein. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) Defendants' Wheat Thins products.

59. As a direct and proximate cause of Defendants' conduct, Plaintiffs and members of the Class have been aggrieved as alleged herein. They were deceived by Defendants' conduct and would not have purchased the products or would have paid less for them if Defendants had disclosed the truth about the products.

15

60.     Defendants' actions as described herein were done willfully and knowingly with reckless and conscious disregard of Plaintiff's and the Class's rights and were wanton and malicious.

61.     Plaintiffs are therefore entitled to all available remedies under 815 ILCS 505/10a(a) including actual damages, civil penalties, and any other equitable relief this Court deems proper.

62.     Plaintiffs are further entitled to an award of their attorney's fees and costs pursuant to 815 ILCS 505/10a(c).

## COUNT II

## Breach of Express Warranty

## (810 ILCS 5/2-313, *et seq*.)

63.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

64.     Plaintiff Ivan Blanco is a consumer of Wheat Thins and bring this Count individually and on behalf of all other Illinois consumers based on the misrepresentations alleged herein.

65.     MDLZ is and was at all relevant times a merchant with respect to the Wheat Thins products at issue in this case.

66.     MDLZ promised and expressly warranted that its Wheat Thins products were "100% WHOLE GRAIN," when in fact they contain refined (not whole) grains, including cornstarch.

67.     MDLZ has breached the terms of its express warranties by failing to provide the Wheat Thins products as warranted.

68.     The foregoing false advertisements are misleading in a material way because they fundamentally misrepresent the nature of ingredients in Wheat Thins warranted to consumers to induce them to purchase the crackers.

69.    All conditions precedent to MDLZ's liability under the contract, including notice, have been performed by Plaintiffs and the Class, including but not limited to offers to resolve these allegations on behalf of a nationwide class that would include claims by Illinois consumers.

70.    As a direct and proximate result of Defendants' breach of its warranties, Plaintiffs and others similarly situated have been damaged because they would not have purchased the products or would have paid less for them.

**COUNT III**

**Violation of Florida Deceptive and Unfair Trade Practices Act**

**(Fla. Stat. Ann. §§ 501.201, *et seq.*)**

71.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

72.    Plaintiff Kathryn Swiggum is a consumer of Defendants' goods, specifically Wheat Thins.  Ms. Swiggum brings this Count individually and on behalf of all other Florida consumers based on the misrepresentations alleged herein.

73.    Defendants have and continue to disseminate false and misleading marketing messages on Wheat Thins products as alleged herein.

74.    Defendants' conduct constitutes an unlawful and unfair method of competition and deceptive trade practice in the conduct of any trade or commerce in violation of Fla. Stat. Ann. § 501.201 et seq.  Defendants' unfair practices as alleged herein offends established public policy and/or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Defendants' deceptive acts and practices were likely to mislead Plaintiffs and reasonable consumers and did so mislead.

75.    Defendants intended that Plaintiffs and the Class members would rely on the unlawful, deceptive and/or unfair business acts and practices alleged herein.  In the alternative, Defendants, as sophisticated manufacturers in the market, knew or should have known that Wheat Thins products did not contain the claimed characteristics because Defendants manufactured, marketed and sold Wheat Thins products without those claimed characteristics.

17

Defendants knew or should have known that their representation that Wheat Thins are "100% WHOLE GRAIN" is deceptive and that these statements or misleading packaging would be relied upon by Plaintiffs and the members of the Class.

76.     Plaintiffs and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices.

77.     As a direct and proximate cause of Defendants' conduct, Plaintiffs and members of the class have been aggrieved as alleged herein.  They would not have purchased the products or would have paid less for them if Defendants had disclosed the truth about the products.  Thus, Plaintiffs are therefore entitled to all available remedies under Fla. Stat. Ann. § 501.201 et seq. including actual damages, civil penalties, and any other equitable relief this Court deems proper.

78.     Plaintiffs are further entitled to an award of their attorney's fees and costs pursuant to Fla. Stat. Ann. § 501.2105.

## COUNT IV

### Breach of Express Warranty

### (Fla. Stat. §§ 672.313)

79.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

80.     Plaintiff Kathryn Swiggum brings this Count individually and on behalf of all other Florida consumers.

81.     MDLZ is and was at all relevant times a merchant with respect to the Wheat Thins products at issue in this case.

82.     MDLZ promised and expressly warranted that its Wheat Thins products were "100% WHOLE GRAIN," when in fact they contain refined (not whole) grains, including cornstarch.

83.     MDLZ has breached the terms of its express warranties by failing to provide the Wheat Thins products as warranted.

84.     The foregoing false advertisements are misleading in a material way because they fundamentally misrepresent the nature of ingredients in Wheat Thins warranted to consumers to induce them to purchase the crackers.

85.     All conditions precedent to MDLZ's liability under the contract, including notice, have been performed by Plaintiffs and the Class, including but not limited to offers to resolve these allegations on behalf of a nationwide class that would include claims by Florida consumers.

86.     As a direct and proximate result of Defendants' breach of its warranties, Plaintiffs and others similarly situated have been damaged because they would not have purchased the products or would have paid less for them.

## PRAYER

**WHEREFORE,** Plaintiffs, individually, and on behalf of all others similarly situated, pray for relief pursuant to each cause of action set forth in this Class Action Complaint, as follows:

A.     Declaring that this action can be maintained as a class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.     Ordering actual and compensatory damages for Plaintiffs and the Class;

C.     Ordering statutory penalties for all Counts for which they are available;

D.     Ordering Defendants to pay attorneys' fees and litigation costs;

E.     Awarding punitive, exemplary and/or trebling damages;

F.     Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

G.     Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all causes of action and issues so triable.

Dated:  December 23, 2024                    Respectfully submitted,

                                             By:    */s/ Daniel J. Biederman, Jr.*
                                                    Daniel J. Biederman, Jr.
                                                    Illinois ARDC # 6312355

19

Law Office of Danny Biederman, LLC
20 N. Clark Street, Suite 320
Chicago, IL 60602
(312) 757-5021 | (630) 319-4587
danny@djblegal.com


*Pro hac vice to be sought for:*
DAVE FOX (CA Bar No. 254651)
Dave@FoxLawAPC.com

JOANNA FOX (CA Bar No. 272593)
Joanna@FoxLawAPC.com

COURTNEY VASQUEZ (CA Bar No. 267081)
Courtney@FoxLawAPC.com

**FOX LAW, APC**
201 Lomas Santa Fe Drive, Suite 420
Solana Beach, CA 92075

Tel:  858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiffs and the Proposed Class*